IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

**CHRIS SCHAFFHAUSER**                                                                   **PLAINTIFF**

v.                       **Case No: 4:12-cv-00599 KGB**

**UNITED PARCEL SERVICE, INC.**                                            **DEFENDANT**

## ORDER

Before the Court is plaintiff Chris Schaffhauser's motion for leave to file notice of telephone deposition (Dkt. No. 21) and motion to compel (Dkt. No. 40). For the reasons that follow, Mr. Schaffhauser's motion for leave to file notice of telephone deposition is granted in part and denied in part, and Mr. Schaffhauser's motion to compel is denied.

**I. Mr. Schaffhauser's Motion For Leave To File Notice Of Telephone Deposition**

Federal Rule of Civil Procedure 26(b) permits discovery of "relevant information" that "appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1). While "the standard of relevance in the context of discovery is broader than in the context of admissibility, this often intoned legal tenent should not be misapplied so as to allow fishing expeditions in discovery." *Hofer v. Mack Trucks, Inc.*, 981 F.2d 377, 380 (8th Cir. 1992) (internal citations omitted); *see Murphy v. Deloitte & Touche Grp. Ins. Plan*, 619 F.3d 1151, 1163 (10th Cir. 2010) ("Rule 26(b) will not permit unlimited discovery."); *James v. Hyatt Regency Chi.*, 707 F.3d 775, 784 (7th Cir. 2013) ("[Plaintiff] is not entitled an additional fishing expedition, in hopes of finding a new way to reshape the facts, because he failed to obtain the answers he had hoped for during the previous eighteen months of discovery."). "Some threshold showing of relevance must be made before parties are required to open wide the doors of

discovery and to produce a variety of information which does not reasonably bear upon the issues of the case." *Hofer*, 981 at 380.

Mr. Schaffhauser seeks to depose two senior UPS employees, Stan Deans and Stefond Harris. Mr. Deans was the President of UPS's former Central Region, and Mr. Harris was the Human Resources Operations Manager for the Central Region. Mr. Schaffhauser argues that the depositions of other UPS employees created material issues regarding the extent of Mr. Deans and Mr. Harris's involvement in the employment decision against Mr. Schaffhauser, such as their review and consideration of the employment decision, and the applicability of UPS's "Guidelines for Investigation of Workplace Issues" (the "Guidelines"), the "true nature" of which Mr. Schaffhauser claims Mr. Deans and Mr. Harris can shed light on.

Specifically, as to Mr. Deans and Mr. Harris's involvement in the employment decision, Mr. Schaffhauser points to the deposition testimony of Jimmy McClure and Stanley Roux. Mr. McClure testified that "I can't speak to who above me looked at [statements pertaining to the matter] or when they looked at them or by how much, but I did send them to him" and, regarding whether "somebody from the region office" was on the telephone call that discussed the matter, "[l]ikely I would say" (Dkt. No. 21-1, at 22-23). Mr. Roux stated that "I would not make or have a division manager make a decision without reviewing the recommendation with the district manager, the region HR manager or region HR ops manager" and admits that Mr. Harris or Mr. Deans "could have" reviewed the matter (*Id.* at 13-14). Mr. Roux also confirms that he had several direct discussions with Mr. Harris about the matter (Dkt. No. 25, at 9). Regarding the Guidelines, Mr. Schaffhauser argues that because Mr. Deans and Mr. Harris are the "big bosses," "they will be able to address the application of the policies and guidelines, when they were implemented, and why they were not followed here" (*Id.* at 6).

In response, UPS contends that Mr. Deans and Mr. Harris are not "material witnesses." UPS also notes that Mr. Schaffhauser already has deposed 13 UPS employees in this matter (Dkt. No. 23, at 2). Mr. Deans, UPS contends, never spoke to anyone about Mr. Schaffhauser's misconduct or demotion, and Mr. Harris "did not play any substantive role in the decision to demote" him but was "merely informed of [Mr. Schaffhauser's] situation during the course of regularly scheduled conference calls to discuss pending personnel matters" (*Id.* at 1-2). UPS claims that Mr. Roux explained the limited nature of Mr. Harris's involvement:

> Q: It wasn't just your decision. It was the district's and the region's decision, right? You've already told us that, right?
>
> A: It was my decision.
>
> Q: With discussion and input from the district and the region, right?
>
> A: And Jim Wilson [Mr. Schaffhauser's direct supervisor prior to his demotion].
>
> . . .
>
> Q: So [Mr. Schaffhauser's] choice was to resign?
>
> A: He could have.
>
> Q: Or take what you and [Mr. Harris] and others decided was appropriate for him?
>
> A: What Jim Wilson and I decided.
>
> Q: With input from the region and district managers, right? You already told us that.
>
> A: It was reviewed with those people.
>
> Q: And they gave their opinions as to what they thought should be done, right?
>
> A: And said at the end of the day, it's the district's decision.

(*Id.* at 4-5). As further evidence of Mr. Harris's allegedly limited involvement, UPS submits a declaration of Mr. Harris in which he states:

> [n]either Mr. Deans nor I were involved in the investigation into [Mr.] Schaffhauser's February 2012 misconduct. Neither Mr. Deans nor I played a substantive role in the decision to demote Mr. Schaffhauser . . . . I do not recall

3

>Mr. Deans being involved in any discussion about Mr. Schaffhauser. I was merely informed of Mr. Schaffhauser's situation during regularly scheduled conference calls with . . . [Mr.] Roux to discuss pending personnel matters. . . . I was informed of Mr. Schaffhauser's situation as a matter of course, just as I was informed of other matters regarding human resources in the Central Region. As a practical matter, I did not have time to be substantively involved in the discipline of every Central Region employee. For that, I relied on my district human resource managers.

Lastly, UPS claims that neither Mr. Deans nor Mr. Harris could provide any additional relevant testimony on the Guidelines because neither was involved in this investigation and the Guidelines are not binding.

Given Mr. Roux's sworn testimony that he had several direct discussions with Mr. Harris regarding Mr. Schaffhauser's situation, the Court determines that the testimony of Mr. Harris as to his role in reviewing Mr. Schaffhauser's conduct and deciding to demote him is "relevant information" that "appears reasonably calculated to lead to the discovery of admissible evidence." See Fed. R. Civ. P. 26(b)(1). Namely, the deposition of Mr. Harris "appears reasonably calculated to lead to the discovery" of exactly how much influence Mr. Harris exercised over the decision and how much input he offered. However, the deposition of Mr. Harris shall be limited to his involvement in the investigation of Mr. Schaffhauser's conduct and the decision to demote him, as there is no evidence that Mr. Harris could provide anything other than duplicative evidence regarding the Guidelines. Moreover, the Court notes that Mr. Schaffhauser's allegations related to UPS's Employee Dispute Resolution ("EDR") process are irrelevant to this motion and shall not be a subject of Mr. Harris's deposition. This is because, based on the record before the Court, neither Mr. Deans nor Mr. Harris are involved in UPS's EDR process, and Mr. Schaffhauser has already deposed UPS's former EDR Administrator Jerry Frasso. Lastly, because there is no evidence in the record before the Court directly linking Mr.

Deans to the investigation of Mr. Schaffhauser's conduct or the decision to demote him, the Court denies Mr. Schaffhauser's request to depose him.

## II. Mr. Schaffhauser's Motion To Compel

Mr. Schaffhauser's motion to compel asks the Court to direct UPS to respond fully and completely to the Interrogatories and Requests for Production of Documents. Six specific items are at issue: (1) Nancy Broadway's 2012 QPR; (2) evidence of whether George Welch received his MIP Award following 2011; (3) details of Mr. Welch's expense receipts for the personal merchandise he charged as a meal expense; (4) Mr. Welch's payroll history; (5) Jim Gardner's current monthly salary; and (6) Alan Harralson's current monthly salary (Dkt. No. 40-2). The Court notes at the outset that this motion was filed passed the deadline for such motions set forth in the Court's Scheduling Order and that, before filing the motion, Mr. Schaffhauser permitted UPS only two days to respond to his discovery demands, which causes this Court to view skeptically Mr. Schaffhauser's claim that he "has attempted to confer in good faith on this specific issue . . . ." (Dkt. No. 40, at 2). Putting that aside, the Court will address the merits of each point Mr. Schaffhauser raises separately.

First, Mr. Schaffhauser does not mention Ms. Broadway, a retired UPS employee, in his motion to compel and thus fails to explain how the information regarding Ms. Broadway is reasonably calculated to lead to the discovery of admissible evidence in this matter. Moreover, this request for information implicates Ms. Broadway's privacy interests. Accordingly, the Court denies Mr. Schaffhauser's motion to compel production of Ms. Broadway's 2012 QPR.

Second, UPS responds to Mr. Schaffhauser's request for evidence of Mr. Welch's MIP Award following 2011 by claiming that it has already provided Mr. Schaffhauser with Mr. Welch's payroll records from March 27, 1993, through the date of Mr. Schaffhauser's most recent discovery requests and that any payments he received from UPS will be reflected therein

5

(Dkt. No. 47-3). Mr. Schaffhauser has not provided evidence otherwise. Because UPS apparently has already provided evidence of the award payments and because a lack of award payments in the payroll records would presumably mean Mr. Welch did not receive them, the Court denies Mr. Schaffhauser's motion to compel production of evidence of Mr. Welch's MIP Award following 2011.

Third, UPS claims that it has provided Mr. Schaffhauser "with all of the documentation it has related to" Mr. Welch charging personal merchandise as a meal expense. Fourth, UPS again contends that it has provided Mr. Welch's payroll history from March 27, 1993, through the date of Mr. Schaffhauser's most recent discovery requests. Because Mr. Schaffhauser has not shown that UPS failed to produce this requested evidence, and to the extent UPS has already provided the requested information, the Court denies Mr. Schaffhauser's motion to compel production of Mr. Welch's expense receipts and payroll history.

Fifth and sixth, Mr. Schaffhauser argues that information regarding Mr. Gardner and Mr. Harralson's current monthly salaries is necessary to assess fully and compare UPS's treatment of Caucasian and African American employees. UPS responds that information on Mr. Gardner and Mr. Harralson's current monthly salaries is not reasonably calculated to lead to the discovery of admissible evidence and that providing that information would constitute an unnecessary violation of UPS employees' privacy. The Court agrees that the information is not reasonably calculated to lead to the discovery of admissible evidence in this case based on the showing made here; Mr. Schaffhauser is asking for current monthly salaries, not salaries at the time of or before UPS's investigation or his demotion. The information sought postdates relevant conduct and the filing of this suit. Thus, the Court denies Mr. Schaffhauser's motion to compel answers to questions regarding Mr. Gardner and Mr. Harralson's current monthly salaries.

\* \* \*

In sum, Mr. Schaffhauser's motion for leave to file notice of telephone deposition is granted in part and denied in part, and Mr. Schaffhauser's motion to compel is denied. Mr. Schaffhauser may depose Mr. Harris, but the deposition shall be limited to Mr. Harris's involvement in the investigation of Mr. Schaffhauser's conduct and the decision to demote him.

SO ORDERED this the 11th day of December, 2013.

_____
Kristine G. Baker
United States District Judge