IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

CHRIS SCHAFFHAUSER                                                        PLAINTIFF

v.                                    Case No: 4:12-cv-00599 KGB

UNITED PARCEL SERVICE, INC.                                              DEFENDANT

OPINION AND ORDER

Plaintiff Chris Schaffhauser brings this action against United Parcel Service, Inc. ("UPS") for race discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"), 42 U.S.C. § 1981, and the Arkansas Civil Rights Act, Ark. Code Ann. § 16-123-101 *et seq.* ("ACRA"), and for failure to accommodate under the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 *et seq.* ("ADA"), and the ACRA.  UPS filed a motion for summary judgment (Dkt. No. 41), Mr. Schaffhauser filed a response (Dkt. No. 55), and UPS filed a reply (Dkt. No. 58).  Mr. Schaffhauser also filed a supplemental response (Dkt. No. 59), to which UPS replied (Dkt. No. 60), and a second supplemental response (Dkt. No. 66). For the following reasons, UPS's motion for summary judgment is granted in its entirety.  Mr. Schaffhauser's race discrimination and failure to accommodate claims are hereby dismissed with prejudice.

I.      **Factual Background**

The following facts are undisputed and taken from UPS's statement of undisputed material facts (Dkt. No. 44) and Mr. Schaffhauser's statement of undisputed material facts (Dkt. No. 57), unless otherwise specified by citation.

UPS hired Mr. Schaffhauser in 1987 and later promoted him to various supervisory and management positions in its Little Rock, Arkansas, facility.  From January 1, 2007, to March 8,

2012, Mr. Schaffhauser worked as a Plant Engineering Manager.  During his employment, Mr. Schaffhauser received various trainings on UPS policies and procedures, including its anti-harassment, anti-discrimination, and ADA polices.  UPS's Professional Conduct and Anti-Harassment Policy "prohibits unprofessional and discourteous actions, even if those actions do not constitute unlawful harassment. . . .  [D]erogatory or other inappropriate remarks, slurs, threats or jokes will not be tolerated. . . . .  Each employee must exercise his or her own good judgment or avoid engaging in conduct that may be perceived by others as harassment" (Dkt. No. 44, at 1-2).

In late 2011, Mr. Schaffhauser began experiencing severe lower back pain due to an -injury.  To treat his back pain, Mr. Schaffhauser received a steroid injection on December 19, 2011.  Mr. Schaffhauser claims that the steroid injection temporarily caused him mood swings, increased irritability, and increased high blood pressure.

In early February 2012, Mr. Schaffhauser, who is Caucasian, had a conversation with three African American UPS employees:  Neal Sharkey, Quentin Goodwin, and Harold Williams.  At the time of the conversation, Mr. Sharkey was a manager, and Mr. Goodwin and Mr. Williams were supervisors.  During the conversation, Mr. Schaffhauser made the following statement about African American hourly employee Rodney Barefield:  "[i]f he ever hit me, I would hit him back so hard it'd knock the black off of him" (*Id.* at 3).  Mr. Schaffhauser's statement came after Mr. Goodwin had allegedly said, "I wish Rodney Barefield would take a swing at me and I would knock that motherfucker out" (Dkt. No. 57, at 4-5).  Mr. Schaffhauser admits making the comment, that it could be interpreted as racist, and that it was a mistake, but claims he was just joking and did not intend it to be racist.  Mr. Sharkey, Mr. Goodwin, and Mr. Williams appear to all agree that Mr. Schaffhauser was joking, and none took offense.  Mr.

Barefield reported to the Plant Engineering Department, which was managed by Mr. Schaffhauser.

Several days after this conversation, on February 13, 2012, Mr. Barefield told Mr. Schaffhauser that he "had something for [Mr. Schaffhauser] later" (Dkt. No. 44, at 3).  When Mr. Schaffhauser asked if Mr. Barefield meant a grievance, Mr. Barefield responded that it was "something bigger" (*Id.*).  Mr. Schaffhauser reported his concerns that Mr. Barefield was threatening him with workplace violence to Area Human Resources Manager Jimmy McClure. Mr. Schaffhauser eventually told Mr. McClure about the entire conversation he had with Mr. Sharkey, Mr. Goodwin, and Mr. Williams, including Mr. Schaffhauser's comment.  Mr. McClure then interviewed Mr. Sharkey, Mr. Goodwin, and Mr. Williams, and Mr. McClure asked Mr. Schaffhauser to prepare a written statement memorializing his version of events.  Mr. McClure then prepared and submitted a written summary of the situation, along with his interview notes, to Director of Human Resources for the Central Plains District Stan Roux, to whom Mr. Schaffhauser also submitted his written statement on February 22, 2012.  In his written statement, Mr. Schaffhauser claimed that his medical condition was a "contributing factor in [his] poor choice of words" (*Id.* at 6; *see* Dkt. No. 55-4, at 34).

After reviewing the materials from Mr. McClure and Mr. Schaffhauser and discussing the situation with Mr. Schaffhauser's supervisor Jim Wilson and his own supervisors, Mr. Roux decided to demote Mr. Schaffhauser from Plant Engineering Manager to Automotive Supervisor. Mr. Roux and Mr. Wilson notified Mr. Schaffhauser of the decision on March 8, 2012.  Even so, Mr. Schaffhauser claims that UPS did not follow its own investigate guidelines, which require a full investigation of all relevant facts and information and a complete report with full analysis of

all factual disputes and inconsistencies, because the report submitted was prepared before Mr. Schaffhauser's written statement was delivered (Dkt. No. 57, at 5-6).

Sometime in March or April 2012, pending grievances filed by Mr. Barefield were withdrawn or settled. Though it is clear that Mr. Barefield filed grievances regarding Mr. Schaffhauser's comment toward him, the record before the Court is not specific as to the subject matter of the grievances withdrawn by the Union. Regardless, Mr. Roux testified that, in his opinion, the Union may have withdrawn Mr. Barefield's grievances because UPS had addressed the issue of Mr. Schaffhauser's comment.

Mr. Schaffhauser disagrees that a demotion was the appropriate level of discipline. Accordingly, on May 21, 2012, Mr. Schaffhauser requested UPS's Employment Dispute Resolution ("EDR") process. UPS's EDR process has four steps: open-door; facilitation; peer review; and mediation. Open-door, which Mr. Schaffhauser alleges is a required step once requested, requires a UPS HR representative to meet informally with the employee. However, neither Mr. Roux nor Mr. Wilson met with Mr. Schaffhauser. On June 19, 2012, Mr. Schaffhauser also requested the optional peer review, which Jerry Frasso, the EDR administrator, denied because there was "confidential" information that was "inappropriate" for peer review, without further explanation (Dkt. No. 57, at 14). UPS also did not respond to Mr. Schaffhauser's request regarding why his medical condition may or may not have been considered in the discipline process.

On August 13, 2012, Mr. Schaffhauser filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"). The EEOC dismissed Mr. Schaffhauser's charge and issued a right to sue letter on August 21, 2012. He filed this action on September 21, 2012. On September 4, 2012, UPS sent Mr. Schaffhauser a letter requesting information about

his medical condition.   Mr. Schaffhauser did not respond.   UPS sent a follow-up letter on September 26, 2012, to which Mr. Schaffhauser again did not respond.

## II.      Legal Standard

Summary judgment is proper if the evidence, when viewed in the light most favorable to the nonmoving party, shows that there is no genuine issue of material fact and that the defendant is entitled to entry of judgment as a matter of law.   Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).   A factual dispute is genuine if the evidence could cause a reasonable jury to return a verdict for either party.   *Miner v. Local 373*, 513 F.3d 854, 860 (8th Cir. 2008). "The mere existence of a factual dispute is insufficient alone to bar summary judgment; rather, the dispute must be outcome determinative under the prevailing law."   *Holloway v. Pigman*, 884 F.2d 365, 366 (8th Cir. 1989).   However, parties opposing a summary judgment motion may not rest merely upon the allegations in their pleadings.   *Buford v. Tremayne*, 747 F.2d 445, 447 (8th Cir. 1984).   The initial burden is on the moving party to demonstrate the absence of a genuine issue of material fact.   *Celotex Corp.*, 477 U.S. at 323.   The burden then shifts to the nonmoving party to establish that there is a genuine issue to be determined at trial.   *Prudential Ins. Co. v. Hinkel*, 121 F.3d 364, 366 (8th Cir. 2008).   "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."   *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

"There is no 'discrimination case exception' to the application of summary judgment, which is a useful pretrial tool to determine whether any case, including one alleging discrimination, merits a trial."   *Torgerson v. City of Rochester*, 643 F.3d 1031, 1043 (8th Cir. 2011) (en banc) (citing *Fercello v. Cnty. of Ramsey*, 612 F.3d 1069, 1077 (8th Cir. 2010)). "Because summary judgment is not disfavored and is designed for 'every action,' panel

statements to the contrary are unauthorized and should not be followed." *Id.* Accordingly, this Court applies the same summary judgment standard to discrimination cases as it does to all others.

### III.   Race Discrimination Claim

Mr. Schaffhauser brings a claim of race discrimination against UPS under Title VII, 42 U.S.C. § 1981, and the ACRA. Courts use identical standards to evaluate race discrimination claims brought under these three statutes. *Davis v. KARK-TV, Inc.*, 421 F.3d 699, 703-04 (8th Cir. 2005).

Mr. Schaffhauser can establish a *prima facie* claim of race discrimination either by providing direct evidence of discrimination or by creating an inference of unlawful discrimination under the three-step analysis set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-05 (1973). *Bone v. G4S Youth Servs., LLC*, 686 F.3d 948, 953 (8th Cir. 2012). Direct evidence is evidence "showing a specific link between the alleged discriminatory animus and the challenged decision, sufficient to support a finding by a reasonable fact finder that an illegitimate criterion actually motivated" the adverse employment action. *Torgerson*, 643 F.3d at 1044 (quoting *Griffith v. City of Des Moines*, 387 F.3d 733, 736 (8th Cir. 2004)). "Thus, 'direct' refers to the causal strength of the proof, not whether it is 'circumstantial' evidence. A plaintiff with strong direct evidence that illegal discrimination motivated the employer's adverse action does not need the three-part *McDonnell Douglas* analysis to get to the jury, regardless of whether his strong evidence is circumstantial." *Id.* However, "if the plaintiff lacks evidence that clearly points to the presence of an illegal motive, he must avoid summary judgment by creating the requisite inference of unlawful discrimination through the *McDonnell Douglas* analysis, including sufficient evidence of pretext." *Id.*

A.      **Direct Evidence Analysis**

"To be entitled to direct evidence analysis, the plaintiff must present evidence of conduct or statements by persons involved in the decision-making process that may be viewed as directly reflecting the alleged discriminatory attitude sufficient to permit the factfinder to infer that that attitude was more likely than not a motivating factor in the employer's decision." *Rivers-Frison v. Se. Mo. Cmty. Treatment Ctr.*, 133 F.3d 616, 619 (8th Cir. 1998) (internal quotation marks omitted).  "[N]ot every prejudiced remark made at work supports an inference of illegal employment discrimination." *Id*.  Rather, "[d]irect evidence of employment discrimination must have some connection to the employment relationship." *Id*.  Direct evidence of discrimination is not established by mere "stray remarks in the workplace, statements by nondecisionmakers, or statements by decisionmakers unrelated to the decisional process." *Id*. (quoting *Beshears v. Asbill*, 930 F.2d 1348, 1354 (8th Cir. 1991)) (internal quotation marks omitted).

As direct evidence, Mr. Schaffhauser offers Mr. Roux's alleged admission of a *quid pro quo* and UPS's alleged failure to follow its own EDR Policy and Investigation Guidelines. However, neither "may be viewed as directly reflecting the alleged discriminatory attitude sufficient to permit the factfinder to infer that that attitude was more likely than not a motivating factor in the employer's decision." *See id.* at 619.

Mr. Roux, in his deposition, merely stated that, in his opinion, the Union withdrew Mr. Barefield's grievance regarding Mr. Schaffhauser because UPS already had addressed it.  Mr. Roux's retrospective observation regarding the Union's possible motivation for withdrawing Mr. Barefield's grievance, without something more, does not directly reflect an alleged discriminatory attitude by Mr. Roux or anyone else who may have been involved in the decision to demote Mr. Schaffhauser.  Accordingly, Mr. Roux's statement is not direct evidence of race

discrimination by UPS, though the Court still may consider it in the *McDonnell Douglas* analysis.

The Court finds unconvincing, both as direct and circumstantial evidence, Mr. Schaffhauser's argument that UPS failed to follow its own EDR Policy and Investigation Guidelines by subjecting Caucasian and African American employees to different disciplinary standards generally and denying him peer review through the EDR process specifically.  Mr. Schaffhauser points to specific African American employees who received peer review and the deposition testimony of a UPS employee who says he cannot recall an African American employer ever being denied open-door or peer review in his 26 years at UPS.  However, the UPS EDR handbook grants the EDR administrator sole discretion to deny peer review.  Moreover, the EDR administrator appears on the record before the Court to have denied peer review equally among protected classes (Dkt. No. 58-1 ("Eleven individuals have been denied peer review since 2008.  Of those, five were African-American, five were Caucasian, and one was Hispanic.  Some were men, some were women.  The process was equally applied to everyone.")).

### B.     *McDonnell Douglas* **Analysis**

Under the *McDonnell Douglas* analysis, "the plaintiff bears the burden of establishing a *prima facie* case of discrimination."  *McGinnis v. Union Pac. R.R.*, 496 F.3d 868, 873 (8th Cir. 2007).  If a plaintiff makes out a *prima facie* case, he "creates a presumption of unlawful discrimination, rebuttable through the showing of a legitimate nondiscriminatory reason for the action."  *Tyler v. Univ. of Ark. Bd. of Trs.*, 628 F.3d 980, 990 (8th Cir. 2011).  Lastly, a plaintiff "may still demonstrate the employer's proffered reason was pretextual and unlawful discrimination was a motivating factor in the adverse employment decision."  *Id.*

### 1. *Prima Facie* **Case**

To make out a *prima facie* case of race discrimination, Mr. Schaffhauser must show that he: "(1) is a member of a protected group; (2) was meeting the legitimate expectations of the employer; (3) suffered an adverse employment action; and (4) [suffered] under circumstances permitting an inference of discrimination." *Davis v. Jefferson Hosp. Ass'n*, 685 F.3d 675, 681 (8th Cir. 2012) (alteration in original) (quoting *Maxfield v. Cintas Corp. No. 2*, 427 F.3d 544, 550 (8th Cir. 2005)). A reverse-racism plaintiff may also be required to show as part of his *prima facie* case that "background circumstances support the suspicion that the defendant is that unusual employer who discriminates against the majority." *Hammer v. Ashcroft*, 383 F.3d 722, 724 (8th Cir. 2004).

Because, as discussed below, UPS has proffered a legitimate, nondiscriminatory reason for demoting Mr. Schaffhauser and Mr. Schaffhauser has failed to establish a disputed genuine issue of material fact regarding whether that reason is pretext, the Court does not address whether Mr. Schaffhauser has shown a *prima facie* case or "suspicious background circumstances." Instead, the Court will assume that he has for purposes of analyzing the summary judgment motion.

### 2. **Legitimate, Nondiscriminatory Reason**

Assuming that Mr. Schaffhauser has established a *prima facie* case of race discrimination and provided "background circumstances" showing that UPS "is the unusual employer who discriminates against the majority," the burden shifts to UPS to produce evidence of a legitimate, nondiscriminatory reason for demoting Mr. Schaffhauser. *Tyler*, 628 F.3d at 990. "This burden is not onerous." *Bone*, 686 F.3d at 954. Courts do not "sit as super-personnel departments reviewing the wisdom or fairness of the business judgments made by employers, except to the

extent that those judgments involve intentional discrimination." *Id.* at 955 (quoting *Rodgers v. U.S. Bank, N.A.*, 417 F.3d 845, 854 (8th Cir. 2005)). Defendants need only proffer a good-faith reason for their action. *Id.* As a legitimate, nondiscriminatory reason for demoting Mr. Schaffhauser, UPS explains that Mr. Schaffhauser made a racially inappropriate comment about an African American subordinate that even Mr. Schaffhauser appears to agree could be interpreted as racist, offensive, and against UPS's Professional Conduct and Anti-Harassment Policy (*See* Dkt. Nos. 41-1, at 52-53, 55-4, at 34).

Mr. Schaffhauser appears to argue that this is not a legitimate reason to demote him. It is true that Mr. Schaffhauser' comment appears to be a single mistake in a long and successful career. Mr. Schaffhauser's co-workers, for example, testify that he is an honest, hardworking, and loyal employee (Dkt. No. 57, at 1). Moreover, Mr. Schaffhauser claims his intent when making the statement was not racist. In fact, many other African Americans, including those present when he made the statement, testified that they were not offended by it.

However, the relevant inquiry is not whether UPS took the correct action, but whether it took an adverse employment action based on a discriminatory animus. *Id.* at 954. (determining that courts do not "sit as super-personnel departments reviewing the wisdom or fairness of the business judgments made by employers, except to the extent that those judgments involve intentional discrimination"). Whether the Court, co-workers, or other UPS supervisors would have chosen to demote Mr. Schaffhauser is irrelevant. The Court agrees that, on the record before it, UPS has articulated a legitimate, nondiscriminatory reason for demoting Mr. Schaffhauser.

### 3.      Pretext

Because UPS has articulated a legitimate, nondiscriminatory reason to demote Mr. Schaffhauser, "the presumption of discrimination disappears," and the burden of persuasion shifts back to Mr. Schaffhauser "to prove that the proffered justification is merely a pretext for discrimination." *Id.* (quoting *Pope v. ESA Servs., Inc.*, 406 F.3d 1001, 1007 (8th Cir. 2005)). "There are at least two ways a plaintiff may demonstrate a material question of fact regarding pretext." *Torgerson*, 643 F.3d at 1047.   First, "[a] plaintiff may show that the employer's explanation is unworthy of credence . . . because it has no basis in fact.  Alternatively, a plaintiff may show pretext by persuading the court that a [prohibited] reason more likely motivated the employer." *Id.* (alterations in original) (citations omitted) (internal quotation marks omitted). "A plaintiff may show pretext, among other ways, by showing that an employer (1) failed to follow its own policies, (2) treated similarly-situated employees in a disparate manner, or (3) shifted its explanation of the employment decision." *Lake v. Yellow Transp., Inc.*, 596 F.3d 871, 874 (8th Cir. 2010).

UPS contends that Mr. Schaffhauser, who offers several potential comparators, cannot identify any similarly situated non-Caucasian employees who received more favorable treatment by UPS.  "At the pretext stage, the test for determining whether employees are similarly situated to a plaintiff is a rigorous one." *Bone*, 686 F.3d at 956 (internal quotation marks omitted).  A plaintiff "must show that [he] and the employees outside of [his] protected group were similarly situated in all relevant respects." *Id.* (internal quotation marks omitted).   The potential comparators "must have dealt with the same supervisor, have been subject to the same standards, and engaged in the same conduct without any mitigating or distinguishing circumstances." *Id.* (quoting *Clark v. Runyon*, 218 F.3d 915, 918 (8th Cir. 2000)).   Further, "[t]o be probative

evidence of pretext, the misconduct of more leniently disciplined employees must be of comparable seriousness." *Id.* (alteration in original) (internal quotation marks omitted).

As comparators, Mr. Schaffhauser offers Mr. Goodwin, Mr. Barefield, Lanier Corbin, Stan Lee, Armor Bryant, and Naaman Kelley. None are similarly situated under the Eighth Circuit pretext standard. For example, in the same conversation in which Mr. Schaffhauser made his comment, Mr. Goodwin, who like Mr. Barefield is African American, allegedly stated, "I wish Rodney Barefield would take a swing at me and I would knock that motherfucker out" (Dkt. No. 57, at 4-5), but UPS did not investigate or discipline him. On the record before the Court, Mr. Goodwin denied making the statement. Mr. Schaffhauser, however, attempts to create a genuine issue of material fact by pointing to Mr. Harris's statement that Mr. Goodwin "may have said that black MF . . . I remember MF but I don't recall for sure about the color" (Dkt. No. 55-3, at 51). Even if Mr. Goodwin made the statement and referenced Mr. Barefield's race, unlike Mr. Schaffhauser's comment, Mr. Goodwin's comment was not directed at a subordinate of the opposite race, as Mr. Barefield did not directly report to Mr. Goodwin and both are African American. Mr. Corbin made a comment about his supervisor hiring another employee because the employee was "black." Mr. Corbin's alleged comment is relevantly distinguished because it was neither physically threatening nor directed at a direct subordinate of the opposite race. Lastly, Mr. Schaffhauser was a manager at the time of his comment, while Mr. Goodwin and Mr. Corbin both were supervisors, a lower level position; thus, Mr. Goodwin and Mr. Corbin's comments are not of comparable seriousness. None of the other offered comparators made a comment that was racial in nature, and thus all are relevantly distinguished. Based on these distinctions, these individuals are not similarly situated, and UPS would have less

incentive to discipline Mr. Goodwin and Mr. Corbin, as well as all other potential comparators, than it did Mr. Schaffhauser.

Mr. Schaffhauser next argues that pretext is shown by UPS's alleged failure to follow its own policies to ensure a fair investigation.  Specifically, Mr. Schaffhauser argues that, in violation of its own policies, UPS did not fully investigate all relevant facts and information and did not complete a report with full analysis of all factual disputes and inconsistencies.  Instead, Mr. Schaffhauser argues, UPS submitted a report for consideration that was prepared before Mr. Schaffhauser delivered his written statement explaining his actions.  Mr. Schaffhauser also argues that UPS violated its own policies by not providing him the open-door process.  Mr. Schaffhauser argues that, unlike peer review, UPS policy requires an open-door process when it is requested, and UPS has not argued otherwise in the record before the Court.  As further proof that the investigation was unfair, Mr. Schaffhauser points to testimony of UPS employees stating that Mr. Schaffhauser's explanation and medical issues should have been considered.

The Court determines that UPS's alleged failure to follow its own policies by not investigating fully or providing the open-door process to Mr. Schaffhauser, without something more, does not prove that race more likely motivated its decision than its proffered justification. This is especially true where, because UPS has proffered a legitimate, nondiscriminatory reason for demoting Mr. Schaffhauser, the presumption of discrimination has disappeared.  *Bone*, 686 F.3d at 954.  "[A]lthough an employer's violation of its own policies may be indicative of pretext, that is not always so."  *Anderson v. Durham D&M, LLC*, 606 F.3d 513, 522 (8th Cir. 2010) (internal quotation marks omitted).  "An employer can certainly choose how to run its business, including not to follow its own personnel policies regarding termination of an employee or handling claims of discrimination, as long as it does not unlawfully discriminate in

doing so." *McCullough v. Univ. of Ark. for Med. Scis.*, 559 F.3d 855, 863 (8th Cir. 2009); *see Guimaraes v. SuperValu, Inc.*, 674 F.3d 962, 979 (8th Cir. 2012). The "appropriate scope of investigation is a business judgment, and shortcomings in an investigation do not by themselves support an inference of discrimination." *McCullough*, 559 F.3d at 863. In fact, UPS sufficiently explained its alleged failure to investigate fully: "[t]his was not a complicated situation. [Mr. Schaffhauser] admitted to UPS that he made a racially inappropriate comment about an African-American subordinate" (Dkt. No. 42, at 15). Regardless, failing to follow policies or conducting an unfair investigation is not illegal without evidence connecting the failure or unfairness to a discriminatory animus.

Lastly, as evidence of discriminatory animus, Mr. Schaffhauser cites Mr. Roux's opinion on the Union's motivations for withdrawing Mr. Barefield's grievances. Based on this retrospective opinion, Mr. Schaffhauser alleges that Mr. Roux demoted Mr. Schaffhauser so that the Union would withdraw Mr. Barefield's grievances, which according to Mr. Schaffhauser shows that Mr. Roux's decision was based on Mr. Schaffhauser and Mr. Barefield's race. However, Mr. Roux's opinion on the Union's motivations does not shed light on his own. And even if Mr. Roux in fact disciplined Mr. Schaffhauser so that the Union would withdraw Mr. Barefield's grievances, this does not show that he did so because of Mr. Schaffhauser's race. Mr. Schaffhauser has failed to demonstrate a genuine issue of material fact sufficient to survive summary judgment on this issue.

For these reasons, the Court determines that a reasonable juror could not conclude, based on the record evidence even viewed in the light most favorable to Mr. Schaffhauser, that UPS's legitimate, nondiscriminatory reason is merely a pretext for race discrimination. Accordingly, summary judgment is granted as to Mr. Schaffhauser's race discrimination claim.

IV.      **Failure To Accommodate Claim**

Mr. Schaffhauser brings a failure to accommodate claim against UPS under the ADA and ACRA.[1]  Courts use the same standards to analyze disability discrimination claims under the ADA and ACRA.  *See Duty v. Norton-Alcoa Proppants*, 293 F.3d 481, 490 (8th Cir. 2002).

Title I of the ADA prohibits employers from discriminating "against an individual on the basis of a disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."  42 U.S.C. § 12112(a).  Discrimination on the basis of disability includes "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity."  *Id.* § 12112(b)(5)(A).

To establish a *prima facie* case of discrimination based on disability, Mr. Schaffhauser must show that he: "(1) is disabled within the meaning of the ADA; (2) is a qualified individual under the ADA; and (3) has suffered an adverse employment decision because of the disability." *Kallail v. Alliant Energy Corp. Servs., Inc.*, 691 F.3d 925, 930 (8th Cir. 2012).  Because UPS does not address the second and third factors of the *prima facie* case, the Court presumes that Mr. Schaffhauser has shown them for summary judgment purposes.  UPS, however, does argue that Mr. Schaffhauser was not disabled within the meaning of the ADA.

---

[1]      UPS stated in its motion for summary judgment that Mr. Schaffhauser "has only alleged a failure to accommodate claim.  He has not alleged a disparate treatment claim" (Dkt. No. 42, at 20), and Mr. Schaffhauser did not directly address this issue in his response.  For this reason, and because Mr. Schaffhauser has not established a *prima facie* case or pretext for a disparate treatment based on disability claim, UPS is granted summary judgment on such a claim to the extent Mr. Schaffhauser intended to bring one.

To be considered disabled within the meaning of the ADA, Mr. Schaffhauser must show that he had "a physical or mental impairment that substantially limits one or more [of his] major life activities . . . [or] a record of such an impairment." 42 U.S.C. § 12102(1). Mr. Schaffhauser claims that, as a result of steroid shots received in December 2011 to treat severe lower back pain, he experienced "a change to his physical and neurological condition, including a severe reaction with stress, high blood pressure, mood swings and increased irritability" (Dkt. No. 56, at 26). According to Mr. Schaffhauser, this physical and mental impairment substantially limited both a major life activity—interacting with others—and a major bodily function—his neurological system (*Id.*). While UPS contends that Mr. Schaffhauser's impairment does not count as a disability under the ADA because it was "temporary," a time limitation is only imposed on claimants who fall under the "regarded as" subcategory, which parties agree Mr. Schaffhauser does not. *Id.* § 12102(3)(B). Accordingly, the Court finds that whether Mr. Schaffhauser's impairment falls within the purview of the ADA is a question for the jury, if he meets all other requirements.

In addition to demonstrating a *prima facie* case of discrimination, Mr. Schaffhauser also must establish a failure to accommodate. "To determine whether an accommodation for the employee is necessary, and if so, what the accommodation might be, it is necessary for the employer and employee to engage in an 'interactive process.'" *Peyton v. Fred's Stores of Ark., Inc.*, 561 F.3d 900, 902 (8th Cir. 2009). To show that the employer failed to participate in the interactive process, a disabled employee must demonstrate that:

> 1) the employer knew about the employee's disability; 2) the employee requested accommodations or assistance for his or her disability; 3) the employer did not make a good faith effort to assist the employee in seeking accommodations; and 4) the employee could have been reasonably accommodated but for the employer's lack of good faith.

*Id.*

UPS does not dispute the first, third, and fourth factors, and this Court will consider them satisfied by Mr. Schaffhauser for summary judgment purposes.  Instead, UPS contends that Mr. Schaffhauser never requested an accommodation for his disability.   UPS points to Mr. Schaffhauser's deposition testimony in which he allegedly admitted to never requesting an accommodation and not responding to UPS's efforts to initiate the interactive process because he no longer needed an accommodation (Dkt. Nos. 42, at 21-22, 58, at 6; *see* Dkt. No. 41-1, at 30). Further, Mr. Schaffhauser admitted in deposition testimony that, as a supervisor, he was trained in UPS's ADA program and knew how to request formally an accommodation (Dkt. No. 41-1, at 53-54).

In response, Mr. Schaffhauser states that he "specifically requested that UPS consider his disability in February of 2012 regarding a potential employment related decision" (Dkt. No. 56, at 28; *see* Dkt. No. 55-4, at 33-35 ("I feel [the steroid shots were] a contributing factor in my poor choice of words. . . .  I am hopeful that I will be given a vote of confidence and UPS will allow me to stay in my current position.").   In other words, Mr. Schaffhauser claims that he requested an accommodation in the form of a reduction in discipline.   Moreover, Mr. Schaffhauser cites district courts outside of the Eighth Circuit and UPS's own compliance manual to argue that failure to make a clear, unambiguous accommodation request is not necessarily fatal to his failure to accommodate claim (Dkt. No. 56, at 28-29).   As to Mr. Schaffhauser's alleged failure to respond, UPS's efforts to initiate the interactive process occurred only after Mr. Schaffhauser filed his EEOC charge on August 30, 2012, at which time he no longer had the alleged disability and had already been demoted.

The Court credits Mr. Schaffhauser's testimony that he did not request an accommodation and, later, did not need one based on his improved condition. Moreover, although Mr. Schaffhauser again appears to refute this in his affidavit (Dkt. No. 55-5, at 6), "a party may not create a question of material fact, and thus forestall summary judgment, by submitting an affidavit contradicting his own sworn statements in a deposition." *Dotson v. Delta Consol. Indus., Inc.*, 251 F.3d 780, 781 (8th Cir. 2001).

Regardless, even if Mr. Schaffhauser did request an accommodation in the form of a reduction in discipline in his February 2012 written statement, it cannot be the basis for an ADA cause of action because it was untimely. The Eighth Circuit has held that an employee who ignores a problem stemming from his disability until his conduct warrants an adverse employment action does not request a disability accommodation but a second chance to better control his medical condition. *See Hill v. Kan. City Area Transp. Auth.*, 181 F.3d 891, 894 (8th Cir. 1999). In other words, liability under the ADA cannot be established where an employee engages in misconduct, learns of an impending adverse employment action, and then informs his employer of a disability that is the supposed cause of the prior misconduct and requests an accommodation. *See Heard v. St. Luke's Hosp.*, No. 08-5494, 2009 WL 3081513, at *5 (E.D. Pa. Sept. 28, 2009) ("The ADA does not require the employer to provide retroactive accommodation in the form of being absolved of . . . misconduct."); *Davila v. Quest Corp.*, 113 Fed. Appx. 849 (10th Cir. 2004) ("[E]xcusing workplace misconduct to provide a fresh start/second chance to an employee whose disability could be offered as an after-the-fact excuse is not a required accommodation under the ADA."); *Hamilton v. Sw. Bell Tel. Co.*, 136 F.3d 1047, 1052 (5th Cir. 1998) ("[T]he ADA does not insulate emotional or violent outbursts blamed on an impairment. . . . [Plaintiff] can not hide behind the ADA and avoid accountability for his

18

actions."); *Halpern v. Wake Forest Univ. Health Scis.*, 669 F.3d 454, 465 (4th Cir. 2012) ("[T]he law does not require [defendant] to ignore misconduct that has occurred because the student subsequently asserts it was the result of a disability."); *Jones v. Nationwide Life Ins. Co.*, 696 F.3d 78, 90 (1st Cir. 2012) ("When an employee requests an accommodation for the first time only after it becomes clear that an adverse employment action is imminent, such a request can be 'too little, too late.'"); EEOC, *Enforcement Guidance: Reasonable Accommodation and Undue Hardship Under the ADA*, 36 (2002), available at http://www.eeoc.gov/policy/docs/accommodation.html ("Since reasonable accommodation is always prospective, an employer is not required to excuse past misconduct even if it is the result of the individual's disability.").  For this reason, UPS's motion for summary judgment regarding Mr. Schaffhauser's failure to accommodate claim is granted.

\* \* \*

In summary, UPS's motion for summary judgment is granted in its entirety.  Mr. Schaffhauser's race discrimination and failure to accommodate claims are hereby dismissed with prejudice.

SO ORDERED this the 15th day of January, 2014.


_____
Kristine G. Baker
United States District Judge